THE O'GARA COAL COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(ERVIN JONES, Defendant in Error.)

*Opinion filed February 17, 1925.*

1. WORKMEN'S COMPENSATION—*period of temporary partial incapacity cannot be determined in advance.* It is no more possible in cases of temporary partial incapacity to determine when the period of disability will end than it is possible to predict when a period of total incapacity will end, but in either case the length of the incapacity can be determined only when the period ends.

2. SAME—*what evidence will not sustain award for permanent partial incapacity.* Where an employee sustains an injury causing a hernia, which the evidence shows was cured by an operation, the fact that the employee, because of a varicocele which developed subsequent to the injury, is still unable to do heavy work a year after the injury is not sufficient to sustain an award for permanent partial incapacity, where the finding that the varicocele resulted from the injury must rest only in conjecture, and physicians give no reason for the existence of the varicocele and will not say that it is connected with the injury.

WRIT OF ERROR to the Circuit Court of Saline county; the Hon. A. E. SOMERS, Judge, presiding.

MILEY & COMBE, for plaintiff in error.

JAMES B. LEWIS, and A. W. KERR, for defendant in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

Ervin Jones, a miner working for the O'Gara Coal Company, in the course of his employment suffered a hernia, for which an award of $17 a week for fourteen weeks for temporary total disability was made to him by an arbitrator of the Industrial Commission. On review by the Industrial Commission on his petition the same award for temporary total disability was made and a further award of $9.98 a

week for four hundred and two weeks for permanent partial disability, being the maximum permissible under the Workmen's Compensation act. The record was brought by writ of *certiorari* to the circuit court of Saline county, which set aside the order of the commission as erroneous and excessive and entered an award for temporary total incapacity for fourteen weeks at $17 a week and for permanent partial incapacity for three hundred weeks at $9.98 a week. A writ of error was awarded to the O'Gara Coal Company to review this judgment.

At the hearing before the arbitrator on June 4, 1923, five months after the injury, the defendant in error testified that he was then unable to work and had not been able to work since his injury; that it hurt him all the time,— worse when he walked around; that he could not carry a bucket of coal; that the place below the operation still swelled sometimes, and he was wearing a suspensory for his testicles although he did not do so before his injury, and he suffered keen pains in his privates. On January 26, 1923, he was operated on in Chicago.

Dr. McSparin, a physician and surgeon, who examined defendant in error soon after his injury but never treated him, found the rupture on the left side. He examined the defendant in error the day before he testified, and said: "He has a varicocele. It is a question what it is caused by. It might and it might not be caused by the hernia. I wouldn't want to say positively that varicocele can be caused by the hernia. It could be. Varicocele is dilation of the veins. Hernia is protrusion of the bowels through the rings. They are not connected in any way but they both go through the rings. If the ring was sewed up tight it could affect the varicocele. There would be stasis of blood, possibly, and varicocele would follow. It would affect the veins that supply the testicles and cause their enlargement. * * * I do not want to go on record as saying that the varicocele is connected with the injury he complains of. Vari-

cocele is due to a number of things. Pressure is a cause. I did not examine the ring where he had been operated. I don't know whether it is too tight, or anything like that."

Dr. Magnuson testified that he operated on the defendant in error and on March 27 examined him and found the hernia entirely healed. At the first examination he complained of pain in the spermatic cord; at the second, of tenderness all along the scar. The cord was not involved in the case, as in an oblique inguinal hernia, because this was a direct hernia, due to a direct tear of the wall of the abdomen. Dr. Magnuson testified further that he examined the defendant in error to see if there was any swelling of the cord and put his finger in the inguinal ring to see whether there was any pressure on the cord. There was no pressure, and if there was a varicocele it was not connected in any way with the hernia or the result of the operation. Dr. Magnuson recommended the defendant in error to return to work on March 26, and expressed the opinion that he was able to work at that time; that work would be beneficial to him.

At the hearing on review on January 4, 1924, within one week of a year after his injury, the defendant in error testified that since the hearing before the arbitrator he had worked two days in June and seven in July, but it hurt him where he was operated on so that he could not stand it and he had to come out. It was the same work he was doing before he was hurt. He was working in a barber shop, he said, at the time of the hearing and made seven or eight dollars a week, and he was not able to do heavier work than barbering.

Dr. Magnuson testified that he had examined the defendant in error since the hearing before the arbitrator and found nothing different the last time from the first. He had no record of defendant in error's having a varicocele, though he might have had it. On the last examination there was no pressure on the cord where he had been op-

erated on, there was no atrophy, no swelling and no recurrence of the hernia.

This is all the evidence that appears in the record. It is not denied that the defendant in error suffered an injury which temporarily totally disabled him from work, and the award for that disability is not complained of.

The court set aside the commission's finding of permanent partial incapacity, and its further award of $9.98 a week for three hundred weeks is based upon a finding of partial incapacity, the period of which the court finds will be three hundred weeks. This latter finding is without authority of law or basis in the evidence. Neither the commission nor the courts are authorized to speculate as to the probable length of partial incapacity. That can only be determined when the period ends. (*Stromberg Co.* v. *Industrial Com.* 305 Ill. 619; *Groveland Coal Co.* v. *Industrial Com.* 308 id. 499.) It is no more possible in cases of temporary partial incapacity to determine when the period of disability will end than the period of total incapacity. (*Groveland Coal Co.* v. *Industrial Com.* 309 Ill. 73.) If the evidence of the defendant in error is given full credence he is now partially disabled from work, and the source of his disability seems to be the varicocele which Dr. McSparin testifies he has. Dr. McSparin, however, carefully refrains from saying that the varicocele is connected with the injury defendant in error received but expressly declines going on record as saying so, and says that he would not want to say that varicocele can be caused by hernia. He does not express any opinion as to whether the varicocele can be remedied or not. He said he did not examine the ring where the defendant in error had been operated on. Dr. Magnuson testified that the spermatic cord was not involved in the case, because this was a direct hernia, due to a direct tear of the supporting walls of the abdomen; that if there is any varicocele it is not connected in any way with the hernia or the operation.

The testimony of the physicians tends strongly to show that there was a complete recovery from the effects of the injury, and does not indicate that the varicocele, if any exists, is permanent and cannot be cured, and that the defendant in error will not, in case it is corrected, be restored to his normal capacity for work. The defendant in error's testimony indicates that the partial incapacity for work has continued for a year and has shown no improvement. It is contended that this is sufficient basis for the conclusion that the partial incapacity is permanent. The testimony of Dr. Magnuson is that the injury is not the cause of the claimant's condition but that there has been a complete recovery from that injury, and that the varicocele, which seems to be the cause of the claimant's disability, is not the result of his injury. Dr. McSparin will not say that the varicocele is connected with the injury. The only evidence tending to show that the varicocele, which causes the disability, was the result of the injury is the fact that it followed the injury. The doctors who say that the varicocele is not connected with the injury, or will not say that it is, give no other reason for its existence. The finding that the varicocele is the result of the injury can not rest upon conjecture or surmise but must be based on facts proved.

The finding of permanent partial incapacity is not sustained by the evidence, and the court was justified in setting aside the award for permanent partial incapacity but not in making the award for three hundred weeks of partial incapacity which was temporary.

The judgment is reversed and the cause remanded to the circuit court, with directions to set aside the award and remand the cause to the Industrial Commission for a further hearing on any competent testimony offered by either party.      *Reversed and remanded, with directions.*